

The following constitutes the order of the Court.
Signed: May 17, 2021

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re

Advanced Molar Innovation, Inc.,

Debtor.

Case No. 20-51634 MEH

Chapter 7

Date:  04/29/21
Time:  2:30 p.m.
Judge: Hon. M. Elaine Hammond
       via Zoom videoconference

Memorandum Decision on AMI's Motion for Summary Judgment

Petitioning Creditor James McBurney ("McBurney") filed an involuntary petition against Advanced Molar Innovation, Inc.[1] ("AMI") on November 15, 2020.  In response, AMI filed a Motion to Dismiss (Dkt. # 28), later converted to a motion for summary judgment ("Motion") (Dkt. #53).  The sole issue to be determined at this time is whether the claims asserted by the sole petitioning creditor, McBurney, are in bona fide dispute as to liability or amount.[2]  If so, then McBurney may not be a petitioning creditor, as set forth in 11 U.S.C. § 303(b) (requiring each petitioning creditor to be a holder of a claim "that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount").

---

[1] Advanced Molar Innovation, Inc.'s name was changed to Algevity, Inc. shortly before the involuntary petition was filed.  For ease of reference it is identified as "AMI" throughout.
[2] Section 303(b)(2) applies as AMI has 12 or less creditors.

1

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

McBurney's Claims

In the involuntary petition, McBurney asserts two claims. The first claim is $20,875, for the period of January 1, 2018 through February 18, 2018. The second claim is $125,149.50, for the period of February 19, 2018 through May 29, 2020. Both claims are based on McBurney's Management and Consulting Agreement ("Management Agreement"). (Dkt. # 80, p. 25-28) McBurney asserts that the Management Agreement was ratified by the AMI board on February 18, 2018. The minutes state that it was ratified nunc pro tunc to January 1, 2018. Thus, the differentiation in his claims is the February 18, 2018 ratification.

Analysis:

**Burden of Proof**

If McBurney's claims are the subject of a bona fide dispute as to liability or amount, then an order for relief against AMI may not be entered. § 303(b), (h)(1). "Establishing the existence or absence of a bona fide dispute involves a shifting burden of proof. A petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist." *In re Marciano*, 446 B.R. 407, 422 (C.D. Cal. 2010).

**Bona Fide Dispute**

The Ninth Circuit applies the "objective test" to determine whether there is a bona fide dispute as to the liability or amount of a claim supporting an involuntary petition. *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1064–65 (9th Cir. 2002). The objective test requires the bankruptcy court to "determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *Id.* at 1064. The court is not required to resolve the dispute, only to determine whether a bona fide dispute exists.

McBurney asserts there is no bona fide dispute because his Management Agreement was approved by AMI's board as provided in the Minutes of the Annual Board Meeting of Advanced Molar Innovation, Inc., held February 18, 2018 ("February 2018 Minutes") (Dkt # 80). The February 2018 Minutes purport to authorize and affirm numerous actions taken by AMI, including election of directors, engaging Bob Welch and his company Coast Ventures, Inc., ratifying McBurney's Management Agreement, and approving the GAAP Accounting prepared by McBurney. In support of this position, McBurney asserts the February 2018 Minutes were fully executed by electronic means using DocuSign.

In addition, McBurney submitted an extensive Declaration and Evidence Establishing Satisfaction of Section 303(b) and (h) Requirements (Dkt. # 30) ("Docket # 30"). The attachments to Docket # 30 that relate to the issue for this Motion are:

- Exhibit E - Summary of McBurney's evidence list and timeline (Dkt # 30, p. 63 - #30-1, p. 1-4)
- Exhibit I – Claim 1 Agreement/ Timesheets (Dkt. # 30-1, p. 43 – 48)
- Exhibit L - 2018 Time sheets (Dkt. # 30-2, p. 3 – 11)

The remaining attachments are relevant to other issues besides § 303(b)[3] or consist of legal research.[4] Finally, McBurney submitted a transcription of a year's worth of text messages between he and DeBrouse. (Dkt. # 65)

AMI asserts the terms of the Management Agreement providing McBurney's compensation have not been met, thus there is a bona fide dispute as to both the validity and

---

[3] Exhibit A, McBurney's handwritten transcript of the February 1, 2020 initial status conference (p. 14 - 23), Exhibit B, DeBrouse Invention History (partial) (p. 24 – 53), Exhibit F, Business Model and NDA (Dkt. # 30 - 1, p. 5 – 12), Exhibit H, Jan-July 2016 Business Plan Agreement (Dkt. #30-1, p. 19 – 42 and p. 49 - 72), Exhibit K, July 18, 2018 Board Minutes (Dkt. # 30-1, p. 74 – Dkt. # 30-2, p. 1 – 2), Exhibit M, Evidence of November 2020 Termination (Dkt. # 30-2, p. 12 - 19), Exhibit P, Paying Bills in 2020 (Dkt. # 30-2, p. 24 – 26), Exhibit Q, November 13, 2020 CEO Resignation (Dkt. # 30-2, p. 27 – 29); Exhibit R, 303(h)(1) Not paying debts evidence (Dkt. # 30-2, p. 30 – 33), Exhibit S (Dkt. # 30-2, p. 34 – 50; subsequently transcribed and filed as Dkt. # 65).

[4] Exhibits C (p. 54 – 59), D (p. 60-62), G (Dkt. # 30-1, p. 13 – 18), N (Dkt. # 30-2, p. 20 – 21), O (Dkt. # 30-2, p. 22 – 23)

3

amount of McBurney's claim. AMI also challenges whether the Management Agreement was agreed to on behalf of AMI. *See* Supplemental Declaration of Terrence Rockwell (Dkt. # 33-1), Supplemental Declaration of Daniel DeBrouse (Dkt. # 33-2, p. 3 – 4).

My analysis begins with the Management Agreement as both parties rely on it to support their position as to whether a bona fide dispute exists. The payment terms and conditions of the Management Agreement are set forth in its Exhibit A, (Dkt. # 80, p. 28):

- Term & Termination: Agreement to be in effect through December 31, 2018. If terminated prior to this date, then the amount owed McBurney is immediately due and payable. After December 31, 2018, the agreement continues on a month-to-month basis.
- One Time Fee: $22,750, reduced to $22,375 in exchange for an additional 0.25% in stock. The $22,375 becomes payable upon AMI's conversion to a Wyoming profit corporation and shall be paid "in a timely manner consistent with other payables upon the Closing of the initial funding through the private sale of Common Stock" in AMI.
- Monthly Fee: $175 per hour, billable biweekly against time sheets submitted with an initial retainer paid by March 2, 2018. Billing to continue through December 31, 2018, totaling an estimated $100,000 from March to December 2018.
- No Private Placement: Payment of the One Time Fee and Monthly Fees "are contingent upon [AMI] having a successful private placement through the sale of Common Stock in [AMI] of a minimum of $1,000,000."
    - No obligation for Monthly Fees if there is no private placement.
    - The One Time Fee in the amount of $20,875 shall remain as a payable until AMI has the ability to pay.

McBurney asserts that the Board ratified and affirmed his Management Agreement through its approval of the February 2018 Minutes. This combined with his timesheets, the approved GAAP accounting, and his text messages with DeBrouse establish that there can be no bona fide dispute as to his claims.

4

In response, AMI's primary argument is that the terms of the Management Agreement support its position that there is a bona fide dispute as to whether AMI is currently liable for McBurney's claims. First, payment of the One Time Fee and Monthly Fees are contingent upon a successful private placement through a stock sale with a minimum value of $1,000,000. The parties agree that no private placement occurred on these terms. Second, while the One Time Fee may still be payable, the Management Agreement provides it is not due until AMI has the ability to pay. An involuntary debtor's assets are not identified prior to the entry of an order for relief and there is no indication that AMI has the ability to pay.

Similarly, the Management Agreement terms and supporting time sheets support a finding that there is a bona fide dispute as to the amount of McBurney's first claim. Within the Management Agreement, the amount due for the One Time Fee is represented as $22,375, after a conversion of $375, for an increase in McBurney's ownership interest. It is unknown whether this conversion occurred. With no explanation the "No Private Placement" provision states a claim in the amount of $20,875 shall remain a payable. This amount is used in the involuntary petition. But the timesheets provided by McBurney total approximately $1,250 for the time period between January 1, 2018 and February 18, 2018. (Exhibit I, Dkt. # 30-1, p. 47). Additionally, AMI disputes that the timesheets provided for McBurney's second claim were presented for payment towards the Monthly Fee, as set forth in the Management Agreement. (Rockwell, Dkt. # 33-1; DeBrouse, Dkt. # 33-2). McBurney's briefing and declaration do not address this. (Exhibit L, Dkt. # 30-2, p. 3-10).

The additional evidence presented by McBurney must also be considered. The GAAP Accounting for AMI as of February 18, 2018 addresses the relative interests of parties involved with AMI but does not indicate that the substantial outside contribution by sale of corporate shares, direct investment, or otherwise was received by AMI. (Dkt. # 80, p. 29-33) Nor does it indicate the shareholders agreed to alternate terms of payment. The text messages between McBurney and DeBrouse provide insight into the disputes within AMI and the on-going efforts to seek investments in AMI to obtain value based on DeBrouse's inventions. The focus is on the work needed and work performed. There is no significant discussion of

5

Case: 20-51634    Doc# 83    Filed: 05/17/21    Entered: 05/18/21 09:13:29    Page 5 of 8

the terms of McBurney's compensation, or when it would become due and payable. As such, the text messages do not indicate there is no bona fide dispute. (Dkt. # 65). Finally, Exhibit E, McBurney's summary of evidence and timeline is exactly that, a summary of the evidence he presents elsewhere. (Dkt. # 30-1, p. 1)

In sum, I find that McBurney has not established a prima facie case that there is no bona fide dispute as to his claims. That said, assuming for the purpose of argument that he has, I also find that AMI met its subsequent burden to establish a bona fide dispute exists. There is an objective basis upon which to hold there is a legal and factual dispute as to the liability of AMI for McBurney's claims and a factual dispute as to the amount of McBurney's first claim.

To be clear, I make no findings as to the ultimate outcome of either of these disputes. I hold only that there is a bona fide dispute that disqualifies McBurney as a petitioning creditor.

**Contingent Claim**

The Order Converting the Motion to Dismiss to Summary Judgment (Dkt. # 53) stated that the sole issue for summary judgment is whether McBurney's claim is in bona fide dispute. As such, the following analysis is dicta and provided in the interest of judicial economy.

Section 303(b) also requires a petitioning creditor to hold a claim that is not contingent as to liability. The Ninth Circuit has held: "Claims are contingent as to liability when the debtor's duty to pay arises only upon the occurrence of a future event that was contemplated by the parties at the time of the contract's execution. The classic example is a wager between two parties; until the wagered-on event comes to pass, both have contingent liabilities in the amount of the bet." *In re Seko Inv., Inc.*, 156 F.3d 1005, 1008 (9th Cir. 1998) (internal citations omitted).

The Management Agreement provides that payment of the One Time Fee and Monthly Fee are contingent upon AMI having a successful private placement through the sale of common stock in AMI in a minimum amount of $1,000,000. This did not occur.

6

McBurney's claims are thereby contingent as to liability because AMI's duty to pay arises upon the occurrence of the successful private placement contemplated in the Management Agreement.

In conclusion, I find that McBurney does not satisfy the requirements of Sec. 303(b) to be a petitioning creditor because his claims are the subject of a bona fide dispute as to liability and amount. The court will retain jurisdiction for AMI to pursue an award of fees, costs, and/or damages pursuant to § 303(i).

An order granting AMI's motion for summary judgment is being entered contemporaneously with this memorandum decision.

**END OF DECISION**

UNITED STATES BANKRUPTCY COURT for the Northern District of California

Case: 20-51634    Doc# 83    Filed: 05/17/21    Entered: 05/18/21 09:13:29    Page 7 of 8

COURT SERVICE LIST

James McBurney

3077 West Ledyard Way

Aptos, CA 95003