Entered on Docket
August 04, 2021
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: August 3, 2021

_____
**M. Elaine Hammond**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re

Advanced Molar Innovation, Inc.,

                Debtor.

Case No. 20-51634 MEH

Chapter 7

Video Hearing
Date:    July 22, 2021
Time:    10:00 a.m.

ORDER PARTIALLY GRANTING ATTORNEYS' FEES AND DAMAGES

      On May 17, 2021, this court issued a memorandum decision and order granting the summary judgment motion of Advanced Molar Innovation, Inc. ("AMI") (Dkt. # 83, 84). The attempt to force AMI into an involuntary bankruptcy by Petitioning Creditor James McBurney ("McBurney") was dismissed on the basis that McBurney's claims are the subject of bona fide dispute as to liability and amount, and as such, there is no valid petitioning creditor. The court retained jurisdiction for AMI to pursue an award of fees, costs, and/or damages pursuant to 11 U.S.C. § 303(i)[1].

      Now before the court is AMI's motion for damages against McBurney (Dkt. #96). McBurney responded (Dkt. # 104), and AMI replied (Dkt. # 108). The motion came on for

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

hearing on July 22, 2021 and was taken under submission.  For the reasons stated below, AMI is awarded $32,300 in attorneys' fees pursuant to § 303(i)(1) and compensatory damages in the amount of $6,000 pursuant to § 303(i)(2).

This court has jurisdiction pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

ANALYSIS

**A.     Damages Pursuant to § 303(i)**

The Ninth Circuit adopted the totality of the circumstances test as the appropriate standard to apply in determining attorneys' fees and damages under § 303(i)(1) and (2). *Higgins v. Vortex Fishing Systems, Inc.*, 379 F. 3d 701, 707 (9th Cir. 2004).  Section 303(i)(1) provides for an award of fees and/or costs if the purported debtor did not waive the right to judgment under § 303(i).   There is a rebuttable presumption that fees and costs should be authorized to the debtor. *See id.*  In contrast, § 303(i)(2), requires a bad faith finding to award compensatory or punitive damages.

The factors to be considered for determining bad faith by totality of the circumstances for § 303(i) are:

1) the merits of the involuntary petition,
2) the role of any improper conduct on the part of the alleged debtor,
3) the reasonableness of the actions taken by the petitioning creditors, and
4) the motivation and objectives behind filing the petition.

*Id.*

     1.     <u>The merits of the involuntary petition</u>

AMI asserts there was no objective basis for the involuntary petition based on my prior rulings that McBurney failed to establish a prima facie case that there is no bona fide dispute as to the liability or amount of McBurney's claims, and separately that McBurney's claim based on the Management Agreement are contingent.

McBurney states his petition had merit and he believed a trial would have proven his

2

claims were not contingent nor in bona fide dispute.  McBurney further admits that he did not understand the severity of an involuntary bankruptcy.

The issue at the outset of an involuntary bankruptcy is whether the petitioning creditor's claim are in bona fide dispute, not the ultimate merit of the claims.  In addition, the question of whether a claim is contingent requires a legal determination, which in this case was made based on the undisputed terms of the Management Agreement.  Thus, there is no basis upon which to reach a different interpretation at trial.  McBurney further admits he did not understand the severity of an involuntary bankruptcy.

2. <u>The role of any improper conduct on the part of the alleged debtor</u>

McBurney contends there is a long history of improper conduct by Rockwell and DeBrouse.  These allegations are unsupported.  In addition, McBurney's allegations of a Ponzi scheme indicate he does not understand the meaning of the term as his allegations do not address the most basic elements of a Ponzi scheme.  More to the point, AMI is the alleged debtor and McBurney has not raised any allegations of improper conduct by AMI.

3. <u>The reasonableness of the actions taken by the petitioning creditor</u>

AMI contends this is a two-party dispute McBurney sought to drag into bankruptcy, and in doing so, McBurney introduced confidential information into the public record.  Furthermore, McBurney's accusations of DeBrouse's mental instability, and AMI's Ponzi scheme and a "patent shell game" are unsupported and needlessly pejorative.  McBurney does not directly address any these points.  Instead, he argues his actions were reasonable because he believed something was sketchy in AMI's actions and he needed to say something.

McBurney also asserts the text messages between DeBrouse and himself reflect the true sequence of events, however, the entirety of the text messages present a mixed picture.  What is clear is that AMI is a start-up company, and the intellectual property and product it sought to introduce into the market has not generated sufficient income to provide for payment of claims held by most of the shareholders.  What is also clear is that there was discontent between Rockwell, DeBrouse, and McBurney, resulting in McBurney's

3

termination as CEO. Following his purported termination on July 15, 2020, McBurney continued to work closely with DeBrouse in preparation for a marketing presentation on July 29, 2020. Yet, within a couple months, McBurney also discussed using an involuntary bankruptcy to obtain recovery on this claim. Ultimately, the lack of payment to shareholders appears to have been the primary factor in filing the involuntary petition. Courts have recognized that filing an involuntary petition to protect one's own interest evidences bad faith. *See In re Tichy Elec. Co.*, 332 B.R. 364, 377 (Bankr. N.D. Iowa 2005); *In re VII Holdings Co.*, 362 B.R. 663, 667 (Bankr. D. Del. 2007).

4. <u>The motivation and objectives behind filing the petition</u>

AMI argues McBurney simply filed the bankruptcy as a collection tactic. AMI provides Exhibit 7 to the Declaration of Terence Rockwell (#28), which is a letter McBurney wrote to an attorney representing AMI at the time. AMI points to the following statements from the letter:

- [p]ractically speaking the value of the company's assets will drop precipitously without the services if we end up in an Involuntary 303 bankruptcy which of course is an option I discuss below and which you should discuss with your clients.
- I prefer to look at bankruptcy in a positive light for AMI Shareholders and perhaps we could all stipulate to a Debtor in possession Chapter 11 as opposed to a Chapter 7 which is what I would likely bring to recover the large amount the company owes me under my management consulting agreement which is an amount in excess of $100,000 as Mr. Rockwell has been repeatedly reminded as I labored with payment of debts for many years. To be clear, and if I can't head this off at the pass for the reasons above, and I get served with any action by you, I will seek counsel to file an "Involuntary"…

McBurney raised similar points in his text messages with DeBrouse. Additionally, McBurney misunderstood the likely outcome of a Chapter 7 case. At various points he asserts shareholder claims will be paid through a Chapter 7 trustee's licensing of AMI's technology

4

or through the auctioning of assets. Neither of these are likely as the Chapter 7 trustee is unlikely to enter into licensing agreements for estate assets, and in the absence of a defined market IP assets can be difficult to sell. Further, McBurney focuses on the interests of minority shareholders without recognizing that shareholders receive a distribution only if funds are available after administrative, secured, and unsecured claims are paid in full. 11 U.S.C. § 726.

In sum, the totality of the circumstances establish McBurney filed the involuntary petition in bad faith.

### B. Award of attorneys' fees under § 303(i)(1)

AMI requests attorneys' fees in the amount of $33,300 under § 303(i)(1). McBurney takes issue with the amount attorneys' fees incurred related to the motion to seal and settlement discussions.

The lodestar method is applied to determine the allowed amount of fees. Under this approach, " 'the number of hours reasonably expended' is multiplied by 'a reasonable hourly rate' for the person providing the services." *In re Macke International Trade, Inc.*, 370 B.R. 236, 254 (9th Cir. BAP 2007).

AMI's counsel, Wayne Silver, billed at $450 per hour for work performed in this case. I find that this is a reasonable rate for his skill and experience in this area. Following review of the fee statements, I will apply a reduction of $1,000, allowing an award of attorneys' fees in the amount of $32,300 pursuant to § 303(i)(1). No costs were requested.

### C. Award of compensatory damages under § 303(i)(2)

Section 303(i)(2) provides the court may grant judgment against a petitioner that filed the petition in bad faith for any damages proximately caused by the filing; or punitive damages. Review of the totality of the circumstances establishes McBurney filed the involuntary petition in bad faith.

Case: 20-51634    Doc# 115    Filed: 08/03/21    Entered: 08/04/21 07:59:04    Page 5 of 9

AMI requests $125,000 in compensatory damages to restore it to its former position prior to the involuntary filing. This request is supported by Rockwell's declaration. (Dkt. # 57), in which he recognizes compensatory damages are difficult to calculate and asserts funds are required for AMI to hire a public relations firm, a marketing expert, a web designer, and an investment banker. With the possible exception of McBurney, AMI did not have individuals providing these skills prior to the involuntary petition. Further, for most of these areas, AMI's internal issues are the proximate cause of damages, rather that the involuntary filing.

Proximate cause is a question of fact, determined in view of the surrounding circumstances. The question is whether there was a continuous operation between the wrongful act and the injury, or is there a new and intervening cause. *See Milwaukee & St. P.R. Co. v. Kellogg*, 94 U.S. 469, 474-75 (1876). The question here is how much of the damage suffered by AMI is a result of its termination of McBurney without first establishing smeans to take over his actions on behalf of AMI or is a result of the subsequent wrongful bankruptcy filing.

The parties agree that McBurney was terminated as president, CEO, and director prior to the filing of the involuntary petition. (Dkt. # 30-2, p. 15) The actual date of the termination is muddled. The Written Consent of the Majority Shareholders dated July 15, 2020 indicates the Majority Shareholders ratified action taken on July 14, 2020. Text messages between McBurney and DeBrouse indicate that the majority shareholder, DeBrouse, did not consent until a later date. In any case, McBurney and DeBrouse prepared for and offered a video presentation to parties interested in AMI's product on July 29, 2020. McBurney's text messages and statements on the record indicate that there was interest in the product but that no agreements were reached. The record also indicates that no licensing agreements or potential investors were in substantive discussions with AMI but terminated their discussions after the involuntary petition was filed.

Turning then to AMI's request for compensatory damages:

- Web designer: Through settlement discussions following the summary judgment order it was determined that AMI's website was inadvertently set-up as a sub-account of another client of McBurney's. Either the other corporation needs to provide AMI with passwords allowing it to access and modify AMI's website, or AMI needs to create a new website. While an unfortunate situation, AMI's website was not created recently and this condition has existed for some time. Whether all AMI's shareholders were aware of this or not is unclear. As such, I do not find that AMI's need to design and build a new website was proximately caused by the filing of the involuntary petition.
- Investment banker: AMI does not indicate why it needs an investment banker. Based on AMI's prior business plan, I assume AMI seeks to employ an investment banker to assist in monetizing its assets—either through the sale or licensing of its intellectual property. AMI engaged in a larger marketing event on July 29, 2020. There was interest in the intellectual property or product, but nothing resulted in a substantive agreement prior to the involuntary petition and no prospects were lost because of the filing. Again, I find that AMI's need for an investment banker is not a proximate result of the involuntary filing.
- Marketing expert: AMI does not explain why funds for a marketing expert should be included in compensatory damages. This request parallels AMI's request for an investment banker and fails for the same reason.
- Public relations firm: This is the only part of AMI's request for compensatory damages that has merit. During this proceeding, McBurney made numerous disparaging statements in pleadings regarding Rockwell, DeBrouse, and AMI's change in corporate status. Patent information developed by DeBrouse may have been introduced into the public record. Subject to AMI's future attempt to seal the case record, this information is now available through this court's docket, and numerous corporate entities providing docket information for subscription services. AMI has established the need for a public relations firm to assist it in

7

Case: 20-51634    Doc# 115    Filed: 08/03/21    Entered: 08/04/21 07:59:04    Page 7 of 9

clearing the corporate name and reputation proximately caused by the wrongful bankruptcy filing. No damages amount is proposed for this portion. Online research indicates that costs associated with improving a company's online profile range from $3,000 to $10,000. On this basis, I award AMI $6,000 in compensatory damages proximately caused by the involuntary bankruptcy petition.

D. **Award of punitive damages under § 303(i)(2)**

AMI has not established that punitive damages are warranted and will be denied.

Accordingly, for the reasons stated herein, AMI is awarded attorneys' fees in the amount of $32,300 and compensatory damages in the amount of $6,000 for a total judgment of $38,300. A separate judgment shall be issued contemporaneous with this Order.

**END OF ORDER**

Case: 20-51634    Doc# 115    Filed: 08/03/21    Entered: 08/04/21 07:59:04    Page 8 of 9

COURT SERVICE LIST

**Via ECF:**

All ECF Recipients

James McBurney

3077 West Ledyard Way

Aptos, CA 95003